**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

AMERICAN FAMILY CONNECT
PROPERTY AND CASUALTY
INSURANCE COMPANY,

       *Plaintiff*,

       v.

BRANDON D. WILLIAMS and
OLIVIA J. BELLESTRI

       *Defendants*.

_____/

Case No. 2:22-cv-10498

District Judge
Gershwin A. Drain

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [#26]

Before the Court is Plaintiff American Family Connect Property and Casualty

Insurance Company's ("American Family") Motion for Summary Judgment. ECF

No. 26. American Family seeks a ruling that it is not obligated to defend Defendant

Brandon D. Williams ("Williams") in the underlying lawsuit brought by Defendant

Olivia J. Bellestri ("Bellestri"). Further, American Family seeks reimbursement

from Williams for the defense fees and costs that it has incurred to date. Upon review

of the parties' submissions, the Court concludes that oral argument will not aid in

the disposition of this matter. Therefore, the Court will resolve the instant motion on

the briefs. *See* E.D. Mich. LR 7.1(f)(2). For the reasons stated herein, American

Family's Motion for Summary Judgment is granted in part and denied in part.

# I.    BACKGROUND

## A.    Facts

This case stems from Williams' sexual assault and rape of Bellestri in his home on February 19, 2021. Williams carried homeowner's insurance, Policy No. HX00879658, (the "Policy") provided by American Family at the time. The Policy included personal liability insurance covering Williams for claims brought against him for bodily and personal injuries occurring in his home. Bellestri brought an action against Williams for sexual assault on December 20, 2021 (the "Underlying Lawsuit"). At present, Williams and American Family dispute whether the Policy requires American Family to defend and indemnify Williams in the Underlying Lawsuit. The relevant facts as alleged by Bellestri are detailed below.

\*\*\*

Bellestri and Williams became co-workers at a Commerce Township Costco Warehouse in December of 2014. ECF No. 1-2, PageID.17. Williams was Bellestri's supervisor while the two worked together, and he eventually became a supervisor in her direct chain of command. *Id.* at PageID.18. At a holiday party in January 2017, Williams cornered Bellestri as she attempted to leave, positioning her against a wall and kissing her without consent. *Id.* The two began dating in April of the same year, while both were still employed at Costco. *Id.*

While the two were dating, Williams used his supervisory authority to control

2

Bellestri's schedule and vacation time. *Id.* at PageID.19. She asserts that Williams ordered her direct supervisors to deny her paid time off requests to make it more difficult for her to reject his offers to take joint vacations. *Id.* Williams also scheduled paid time off on Bellestri's behalf, forcing her to cancel these entries several times. *Id.*

At some point during the relationship, Williams became verbally and physically abusive. He threatened to—and eventually began to—choke, punch, slap, and otherwise hit Bellestri. *Id.* On August 3, 2018, Williams approached Bellestri at work and threatened to kill her if she refused to be his wife. This abusive treatment led Bellestri to end the relationship that same month. *Id.* After the relationship ended, Williams threatened to share explicit images of Bellestri with others if she refused to continue a sexual relationship with him. *Id.* at PageID.20. He also threatened to block her attempts to transfer to any other Costco location, and he used his personal relationships with other supervisors at the store to counter her complaints of his misconduct. *Id* at PageID.19–21. Williams transferred to a different Costco location in the Fall of 2018. *Id.* at PageID.22. The two maintained a cordial relationship after this, though Bellestri had repeated conflict with Williams' subsequent dating partner between 2018 and 2021. *Id.* at PageID.22–23.

Bellestri visited Williams' home in February 2021. *Id.* at PageID.24. The two got into an argument that became physical when Williams grabbed Bellestri by the

throat and choked her until she could not breathe. *Id.* In addition to choking her, Williams slammed Bellestri against a wall, struck her with his fists, pinned her to the floor, and groped her breasts. *Id.* at PageID.24–25. Williams then raped Bellestri. *Id.* at PageID.25.

Bellestri left Williams' home and went to a hospital because of a rib injury she sustained during the assault; he was waiting for her when she arrived. *Id* at PageID.25–26. He questioned Bellestri about what she would tell the hospital, coaxing her to lie about her injuries. *Id.* at PageID.26. She left the hospital without treatment. *Id.* Shortly after the assault, Bellestri attempted to end communication with Williams. *Id.* In response, he sent sexually explicit photographs of her to members of her family. *Id.*

Bellestri reported the rape and assault to the Westland Police Department on April 5, 2021, and Williams was charged with multiple felonies related to the incident on August 9, 2021. *Id.* at PageID.27. A jury found Williams guilty on multiple counts of criminal sexual conduct, assault with intent to do great bodily harm less than murder, and domestic violence on April 27, 2023. ECF No. 26-8, PageID.255.

\*\*\*

American Family issued a Homeowners Policy to Williams for the period beginning on June 29, 2020 and ending June 29, 2021. ECF No. 1-3. Williams was

thus insured at the time of the rape and assault in his home. Bellestri sued Williams for the incident in December 2021, bringing six counts against him. ECF No. 1-2, PageID.43. Pursuant to the Policy, American Family advised Williams that it would provide him a defense in the Underlying Lawsuit. ECF No. 1, PageID.6. American Family reserved the right to seek reimbursement of all defense costs upon a judicial order that it was not obligated to defend or indemnify Williams in the Underlying Lawsuit. *Id*; *see* ECF No. 1-4.

**B.    The Policy**

The Policy contains a personal liability coverage provision that states, in relevant part:

> If a claim is made or suit is brought against an insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies, we will:
>
> 1. Pay up to our limit of liability for the damages for which an insured is legally liable; and
>
> 2. Provide a defense at our expense using lawyers of our choice, even if the suit is groundless, false, or fraudulent.

ECF No 1-3, PageID.71. "Bodily injury: is defined as "bodily harm, sickness or disease . . ." *Id.* at PageID.61. Further, "occurrence means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results . . . in bodily injury or property damage. *Id.* at PageID.62. Excluded from coverage is bodily injury "which is expected or intended by an insured," and bodily injury "sexual abuse, sexual molestation of any person or

corporal punishment or physical or mental abuse." *Id.* at PageID.73.

Amended to the general personal liability coverage is protection in case of personal injury. *Id.* at PageID.46. "Personal injury" is defined as an "injury arising out of," among other things, "[p]ublication of material, in any manner, that violates a person's right of privacy." *Id.* at PageID.77. Excluded from this coverage is, among other things, personal injury "[a]rising out of a criminal act committed by or at the direction of an insured[.]" *Id.* at PageID.78. "Criminal act" is not defined.

## II.   LEGAL STANDARD

Under the Declaratory Judgment Act, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Jurisdiction under this Act is discretionary, not mandatory. *Rushford v. Firstar Bank, N.A.*, 50 F. App'x 202, 207 (6th Cir. 2002).

Summary Judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is a genuine issue of material fact when "there is sufficient evidence for a trier of fact to find for the non-moving party." *Brown v. Battle Creek Police Dep't*, 844 F.3d 556, 565 (6th Cir. 2016). "The mere existence of *some* alleged factual dispute between the parties will not defeat an

otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Bush v. Compass Grp. USA, Inc.*, 683 F. App'x 440, 444 (6th Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original)). When analyzing a motion for summary judgment, the Court draws "all reasonable inferences in favor of the non-moving party and construe[s] all evidence in the light most favorable to the non-moving party." *Foco v. Freudenberg-Nok Gen. P'ship*, 549 F. App'x 340, 344 (6th Cir. 2013). Nonetheless, "a mere 'scintilla' of evidence in support of the non-moving party's position is insufficient to defeat summary judgment[.]" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)).

While not explicitly addressed in the briefs, the parties seemingly agree that Michigan law controls. Under Michigan law, the construction and interpretation of an insurance contract is a question of law for a court to determine, and "courts resolve disputed insurance policies 'in accordance with their terms.'" *Hamilton Specialty Ins. Co. v. Transition Inv., LLC*, 818 F. App'x 429, 432 (6th Cir. 2020) (quoting *Henderson v. State Farm Fire & Cas. Co.*, 596 N.W.2d 190, 193 (Mich. 1999)). Courts may grant summary judgment in insurance coverage cases when "a word or phrase is unambiguous and no reasonable person could differ with respect to application of the term or phrase to undisputed material facts[.]" *Henderson*, 596

N.W.2d at 193. But "if reasonable minds could disagree about the conclusions to be drawn from the facts, a question for the factfinder exists." *Id.*

## III.   ANALYSIS

Before determining whether to grant or deny summary judgment, the Court must decide whether it should exercise jurisdiction under the Declaratory Judgment Act. In the Sixth Circuit, "[a] proper exercise of discretion under the Declaratory Judgment Act includes 'a reasoned analysis of whether issuing a declaration would be useful and fair.'" *Byler v. Air Methods Corp.*, 823 F. App'x 356, 365 (6th Cir. 2020) (quoting *W. World Ins. Co. v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2014)). Thus, the first question is whether jurisdiction under the Declaratory Judgment Act is appropriate.

## A.   Exercising Jurisdiction Is Proper.

The analysis is guided by a five-factor test introduced in *Grand Trunk Western Railroad Co. v. Consolidated Rail Corp.*, 746 F.2d 323 (6th Cir. 1984):

> 1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;" (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*Byler,* 823 F. App'x at 365 (quoting *United Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d 386, 396 (6th Cir. 2019)).[1] The Court takes the *Grand Trunk* factors in turn below.

> **i.  A declaratory action would (1) settle the controversy and (2) serve a useful purpose in clarifying the legal relations.**

As the Sixth Circuit has acknowledged, "two lines of precedent seem to have developed in our jurisprudence regarding consideration of this first factor in the context of an insurance company's suit to determine its policy liability." *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 555 (6th Cir. 2008). While one line of cases considers only whether the declaratory action settles the insurance coverage controversy, which is not at issue in the Underlying Lawsuit, other courts have found that such declaratory actions do not settle the controversy and merely clarify the legal rights and obligations between the insurer and insured. *Id.* at 555.

The *Flowers* court reasoned that "the difference between these lines of cases appears to rest on the competing policy considerations of consolidating litigation into one court versus permitting a party to determine its legal obligations as quickly as possible." *Mass. Bay Ins. Co. v. Christian Funeral Dirs., Inc.*, 759 F. App'x 431, 436 (6th Cir. 2018) (quoting *Flowers*, 513 F.3d at 555). In a similar case, the *Flowers*

---

[1] The Sixth Circuit has "suggested that a failure to apply the *Grand Trunk* factors constitutes reversible error." *Id.* (citing *Wilmington Sav. Fund Soc'y, FSB v. Kattula*, No. 19-1138, 2019 U.S. App. LEXIS 33247, 2019 WL 7882540, at *1-2 (6th Cir. Nov. 6, 2019) (unpublished order)).

court ruled that "the district court's declaratory judgment did settle the controversy between the parties" because "[t]he only issue addressed by the district court was whether Scottsdale's insurance policy for the Morton Center covered Flowers as an insured." *Flowers*, 513 F.3d at 556. The declaratory action settled the controversy because "the issue was not and could not be considered in the state court action because [the insurer] was not a party to that action" and because "the issue involved a legal, not factual dispute," meaning it "did not require the district court to inquire into matters being developed through state court discovery." *Id.*

On these considerations, the Court finds that a declaratory judgment here would settle the controversy between American Family and the Defendants. The Court is asked to decide only whether the Policy requires American Family to indemnify and defend Williams in the Underlying Lawsuit. This determination is not dependent on the facts being developed in state court. Rather, "[t]he Court's determination of coverage is based on whether the underlying complaint[] allege[s] a theory of recovery that falls within the insurance policy." *Allstate Ins. Co. v. Cantrell Funeral Home Inc.*, 506 F. Supp. 3d 529, 537 (E.D. Mich. 2020) (citing *Reed v. Netherlands Ins. Co*., 860 F. Supp. 2d 407, 412 (E.D. Mich. 2012) ("The Insurer's duty to defend is determined by the allegations in the complaint.").

Thus, because American Family's duty to defend and indemnify relies only  a question of contract interpretation, the Court is faced solely with a question of law.

*Matouk v. Mich. Mun. League Liab. & Prop. Pool*, 907 N.W.2d 853, 858 (Mich. Ct. App. 2017). In other words, whether the Court is to grant or deny American Family's motion, the question of the parties' legal rights and obligations will be resolved. And there would be no ongoing controversy relevant to this Court, as American Family is not a party to the Underlying Lawsuit. For these reasons, the first factor supports exercising jurisdiction.

Similarly, the Court finds that a declaratory judgement would be useful in clarifying the legal relations. As the Sixth Circuit has acknowledged, "it is almost always the case that if a declaratory judgment will settle the controversy, then it will clarify the legal relations in issue." *Flowers*, 513 F.3d at 557. As previously stated, questions about the parties' legal relationship will be resolved regardless of the Court's ruling, so a declaratory action is also useful here.

### ii.    (3) There is no evidence of procedural fencing.

The Court must next consider whether American Family asserted the action for purposes of procedural fencing. Procedural fencing occurs "where the declaratory-judgment plaintiff filed its suit in apparent anticipation of litigation in state court." *United Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d 386, 399 (6th Cir. 2019). "This situation typically arises in insurance coverage disputes, where related litigation is likely to proceed in state court, but a party files a federal declaratory judgment action first in an attempt to obtain a more favorable forum."

*Covenant Life Int'l, Inc. v. City of Norris*, No. 3:23-cv-334, 2024 U.S. Dist. LEXIS 79654, at *9 (E.D. Tenn. May 1, 2024) (citing *Flowers*, 513 F.3d at 558). Accordingly, Sixth Circuit courts, "generally do not make a finding of procedural fencing if the declaratory-judgment plaintiff filed *after* commencement of litigation in state court." *United Specialty Ins. Co.*, 936 F.3d at 399 (emphasis in original).

There is no evidence of procedural fencing here. American Family filed its Complaint nearly three months after the Underlying Lawsuit began, and it does not seek redress for issues being considered in state court. And there is otherwise no evidence of an improper motive. The undersigned thus finds that this factor weighs in favor of jurisdiction.

### iii. (4) The exercise of jurisdiction would not increase friction between federal and state courts.

For the fourth factor, the Court must consider whether a declaratory judgment in this case would increase friction between federal and state courts and improperly encroach on state jurisdiction. The consideration includes three subfactors: (1) whether the underlying factual issues are important to an informed resolution of the case; (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; (3) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution to the declaratory judgment

action. *Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 814 (6th Cir. 2004).

A preliminary review of the three subfactors demonstrates that this consideration favors exercising jurisdiction. As stated above, whether American Family has a duty to defend and indemnify Williams depends on the allegations the underlying complaint, not on the facts developed through discovery or at trial. Under Michigan law, "[t]he issue before the Court is not whether the [underlying] claims have merit, but whether [the claims] allege a theory of recovery that falls within the policy." *Reed v. Neth. Ins. Co.*, 860 F. Supp. 2d 407, 412 (E.D. Mich. 2012) (citing *Am. Bumper & Mfg. Co. v. Hartford Fire Ins. Co.*, 523 N.W.2d 841, 843 (Mich. Ct. App. 1994)). Thus, this factor is irrelevant because the underlying factual issues being developed in state court do not influence this matter.

### iv. (5) The alternative remedy would be equally effective.

The final factor requires the Court to consider whether there is an alternative remedy that is better or more effective than a federal declaratory judgment action. Regardless of the Court's finding on the first four factors, "a district court should 'deny declaratory relief if an alternative remedy is better or more effective.'" *Flowers*, 513 F.3d at 562 (quoting *Grand Trunk Western Railroad Co.*, 746 F.2d at 326).

13

An alternative remedy is available in this case, as American Family could seek a declaratory judgment action in state court. *See, e.g.,* Mich. Comp. Laws § 14.321 (permitting a declaratory judgment action to be brought in Michigan state court). Further, American Family, could "have commenced a separate action, identical to the present action, in state court and moved for consolidation before the same judge presiding over the state court action." *Allstate Ins. Co. v. Garcia*, No. 13-10209, 2013 U.S. Dist. LEXIS 66807, at *6 (E.D. Mich. May 10, 2013).

Though alternative remedies are available at this stage, it is not the case that either would be *more effective* than review by this Court. As explained in *Flowers*, whether the alternative remedies would be more effective is a fact specific inquiry that shifts from case to case. *Flowers*, 513 F.3d at 562. In that case, the Sixth Circuit considered whether there are undecided questions of law, whether a declaratory action in state court can be combined with the underlying proceeding, whether state law provides clear guidance as to the resolution of the legal issue, and whether the alternative remedy would be superior to the instant action. *Id.*

Here, the Court has not been presented with undecided factual issues or questions of law. At summary judgment, the Court must only consider whether common and previously defined terms in the Policy require American Family to defend and indemnify Williams in the Underlying Lawsuit. This is standard contract interpretation on which Michigan law provides ample guidance. Lastly, the remedy

in state court would be the same as that available here—with the caveat that the undersigned is primed to resolve this matter and that litigation would need to restart if the case were moved to state court.

For these reasons, the final consideration counsels in favor of exercising jurisdiction. Accordingly, having considered the five *Grand Trunk* factors, the Court finds it appropriate to exercise jurisdiction under the Declaratory Judgment Act.

**B.      The Court Will Grant Summary Judgment in Part.**

Having decided to exercise jurisdiction under the Declaratory Judgment Act, the Court now considers American Family's motion for summary judgment.

***

In deciding if American Family has a duty to defend and indemnify Williams in the Underlying Lawsuit, the Court must only consider whether the underlying complaint alleges a theory of recovery contemplated by the Policy. *See Am. Bumper & Mfg. Co. v.*, 523 N.W.2d at 843. This inquiry is favorable to the insured, as an insurer must provide coverage even if an insurance policy only arguably permits it. *Hamilton Specialty Ins. Co.,* 818 F. App'x at 433. Any "policies containing ambiguities, especially exclusions, are construed against the insurer and most favorably to the insured." *Whittaker Corp. v. Mich. Mut. Liab. Co.*, 227 N.W.2d 1, 2 (Mich. Ct. App. 1975).

i.      There is no coverage for Counts I–IV.

The parties first dispute whether the Policy extends coverage over the torts alleged in Counts I–IV of the underlying complaint. The claims are as follows: Count I – Assault/Sexual Assault; Count II – Battery/Sexual Battery; Count III – Intentional Infliction of Emotional Distress; and Count IV – General Negligence. ECF No. 1-2, PageID.27–31.

American Family argues that the Policy only covers third party bodily injuries resulting from an "occurrence," which is defined in the Policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in bodily injury[.]" ECF No. 26, PageID.200–201 (quoting ECF No. 1-3, PageID.62). "Accident" is not defined in the Policy, but the insurer argues that the above-listed claims are intentional torts, and thus cannot result from an "accident". In response, Williams does not dispute that the plain language of the policy only covers accidents, but he argues that a genuine issue of material fact remains because Michigan law does not categorically exclude from accident coverage injuries caused by intentional conduct.

Williams is correct that not all intentional conduct is excluded from accident coverage, but he errs in his conclusion. He relies on the Michigan Supreme Court's decision in *Allstate Ins. Co. v. McCarn*, 645 N.W.2d 20 (Mich. 2002), which governs the inquiry. In *McCarn*, the court considered a deadly shooting that occurred when

two sixteen-year-old boys were playing alone at one of the boys' grandparents' home. The grandfather kept a shotgun under his bed that was typically unloaded and that his grandson believed to be unloaded on that day. His belief was incorrect. Both boys handled the firearm for a period. But when the grandson held the weapon, he pointed it at his friend's face, pulled back the hammer, and pulled the trigger. The friend was killed. *Id.* at 22. The deceased boy's parents sued his friend's grandparents. The grandparents held a homeowners insurance policy that extended coverage for damages arising from occurrences, which was defined as it is in the instant Policy. *Id.*[2] Thus, the court was tasked only with determining whether the shooting was an "accident." *Id.*

The court noted that "an insured need not act unintentionally in order for the act to constitute an 'accident' and therefore an 'occurrence.'" *Id.* at 23 (quoting *Frankenmuth Mut. Ins. Co. v. Masters*, 595 N.W.2d 832, 838 (Mich. 1999)). And when an insured does act intentionally, the court must distinguish "between intentional acts that can be classified as 'accidents' and those that cannot." *Id.* The court summarized this inquiry as follows:

> [I]f both the act and the consequences were intended by the insured, the act does not constitute an accident. On the other hand, if the act was

---

[2] "According to the plain meaning of the policy, liability coverage for damages arises from an 'occurrence.' The term 'occurrence' is defined in the insurance policy as: 'an accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in bodily injury or property damage.'" *McCarn*, 645 N.W.2d at 22.

> intended by the insured, but the consequences were not, the act does constitute an accident, unless the intended act created a direct risk of harm from which the consequences should reasonably have been expected by the insured.

*Id.* Under this standard, the court found that the shooting "was an 'accident,' and thus an 'occurrence,' covered under the policy because Robert did not intend or reasonably expect that his actions, pointing and pulling a trigger of unloaded gun, would cause any bodily injury to Kevin LaBelle." *Id.* at 28.

Under the *McCarn* definition of 'accident,' there is no disputing that Williams' sexual assault, battery, and resultant infliction of emotional distress, as described in the underlying complaint, was not accidental. Counts I–IV are all supported by facts describing intentional, forceful sexual assault.[3] Williams certainly, choked, punched, slammed, and threatened Bellestri with an intent to cause physical and emotional injury. And in the implausible instance that Williams did not intend his physical attack and rape to cause bodily injury, the consequences of his actions should have been reasonably expected. As such, coverage is also

---

[3] Though Count IV of the underlying complaint is fashioned "General Negligence," the underlying allegations describe solely intentional conduct, precluding coverage here. (case). ECF No. 1-2, PageID.24–26 (describing Williams choking Bellestri; slamming her against a wall; striking her with his fists; groping her body; threatening to kill her if she tried to leave his home; forcing sexual contact when she tried to leave his home; and intercepting her at the hospital); *see Farmers & Merchs. Mut. Fire Ins. Co. v. Le Mire,* 434 N.W.2d 253, 255 (Mich. Ct. App. 1988) ("The duty of an insurance company to defend its insured arises solely from the language of the insurance contract.").

excluded under the "expected or intended" injury exclusion, which dictates that coverage for "Personal Liability and Medical Payments to Others does not apply to . . . Bodily injury or property damage which is expected or intended by an insured, even if the resulting injury . . . is of a different kind, quality, or degree than initially expected or intended . . ." ECF No. 1-3, PageID.72–73.

The Michigan Court of Appeals ruled as much on similar facts in *Auto-Owners Ins. Co. v. Nyhof*, No. 320256, 2015 Mich. App. LEXIS 936, at *5 (Ct. App. May 7, 2015). In *Nyhof*, an assailant was convicted of criminal sexual conduct for raping someone in her home. The victim sued her assailant and her landlords over the incident. *Id.* at *1. As here, the landlords held a home insurance policy that covered bodily injuries caused by "occurrences" or "accidents." *Id.* at *4. The court ruled that rape cannot be accidental: "Rape is an intentional criminal act. Jones was convicted of raping defendant, so it is clear that he intended to rape defendant and that the rape was not an accident. Because the rape was not an accident, defendant's bodily injury was not caused by an 'occurrence.'" *Id.* at *5. Such is the case here.

Applying *McCarn* and *Nyhof*, the Court finds Bellestri's bodily injury was not caused by an occurrence, and was intended by Williams, meaning American Family is not required to defend or indemnify Williams from liability for Counts I–IV in the Underlying Lawsuit. American Family's exposure to defend and indemnify extends solely from the language of the Policy. And the Court will not interpret or expand

the insurer's risk beyond what it assumed. *Ill. Emp'rs Ins. v. Dragovich*, 362 N.W.2d 767, 769 (Mich. Ct. App. 1984) ("Clear and specific exclusions must be given effect; an insurance company may not be held liable for a risk it did not assume.").

Because the Court finds that coverage for injuries claimed in Counts I–IV is excluded as non-accidental, it is unnecessary to address whether coverage is also excluded under the sexual abuse exclusion or whether emotional distress (Count III) qualifies as bodily injury. Pursuant to the Reservation of Rights Agreement (ECF No. 1-4, PageID.83–84), American Family is not required to defend and indemnify Williams on Counts I–IV and is entitled to reimbursement of defense costs.

### ii. American Family has not shown that there is no coverage for Counts V and VI.

Counts V and VI both assert theories for common law invasion of privacy. For each, Bellestri claims that Williams intentionally intruded upon her private matters "by disseminating sexually lurid semi-nude photographs of her, which depict her private body parts, without her actual or constructive authorization or consent." ECF No. 1-2, PageID.31–33.

American Family does not contest that the claimed injury qualifies as a "personal injury" under the Policy, since coverage includes "publication of material, in any manner, that violates a person's right of privacy." ECF No. 1-3, PageID.77. And unlike the bodily injury coverage, this provision is not limited to accidents. Nonetheless, the insurer argues that coverage is not available because Bellestri

accuses Williams of an act that violates MCL 750.145e – Dissemination of sexually explicitly visible material of another person. ECF No. 26, PageID.211. Such an offense assertedly activates the "criminal acts" exclusion under the Policy, which precludes coverage for personal injuries "arising out of a criminal act committed by or at the direction of an insured[.]" ECF No. 1-3, PageID.78. American Family believes that this provision controls even though Williams was not charged or convicted under the statute for distributing Bellestri's private images. ECF No. 26, PageID.210. Williams argues in response that the criminal acts exclusion does not apply here because American Family has not shown that Williams violated every element of the statute. ECF No. 29, PageID.304. He asserts correctly that MCL 750.145e makes criminal the act of disseminating sexually explicit images of another only if it is done "with the intent to threaten, coerce, or intimidate." *Id.* (quoting MCL 750.145e). He claims there is no record evidence to support such a conclusion.

Upon review of the Policy, the Court finds that there is a genuine issue of material fact as to whether the "criminal acts" exclusion precludes coverage for Counts V and VI. American Family has not met its burden to show otherwise. In reaching this conclusion, the Court does not consider whether there is sufficient evidence to show that Williams violated the intent element of MCL 750.145e. Rather, summary judgment cannot be granted because the term "criminal act" is not defined in the Policy, and American Family fails to establish that a criminal act

occurred or that the criminal acts exclusion is triggered regardless of whether Williams has been charged or convicted of the relevant crime. As discussed, any ambiguity must be construed in favor of coverage for the insured. *Whittaker Corp.*, 227 N.W.2d at 2 (noting that "policies containing ambiguities, especially exclusions, are construed against the insurer and most favorably to the insured.").

***

It is not the law in Michigan, as American Family suggests, that the mere accusation of criminal conduct is sufficient to trigger a criminal acts exclusion. To the extent Michigan law previously endorsed such an application, this is no longer the case. In 1993, the Court of Appeals of Michigan in *Allstate Ins. Co. v. Keillor*, 511 N.W.2d 702 (Mich. Ct. App. 1993) approved of a criminal acts exclusion where the insured furnished alcohol to a minor who subsequently got into a fatal car accident. *Id.* at 704. The policy exclusion stated in full: "We do not cover any bodily injury or property damage which may reasonably be expected to result from the intentional or criminal acts of an insured person or which is in fact intended by an insured person." *Id*. at 704. The insured was not charged or convicted of furnishing alcohol to a minor but was sued by the decedent's estate over the incident. *See Allstate Ins. Co. v. Hayes*, 499 N.W.2d 743, 744 (Mich. 1993). The Court nonetheless applied MCL 436.33, the statute prohibiting furnishing alcohol to a minor, and found that "it would be an overly technical and strained construction not

to consider the act of furnishing alcohol to a minor as a criminal act within the meaning of the exclusion. Accordingly, the act of furnishing alcohol to a minor is a criminal act within the meaning of the exclusionary clause." *Keillor*, 511 N.W.2d at 705.

Since then, Michigan courts have repeatedly expressed concern about the reach and limits of criminal acts exclusions in insurance policies. The Michigan Supreme Court affirmed *Keillor* in 1995 on different grounds, expressly declining to address the criminal acts exclusion. In a short concurrence, Justice Riley stated: "I write separately to signal my concerns with the result of the Court of Appeals regarding the intentional/criminal acts exclusion. I agree, however, that because the Court holds that the automobile exception precludes coverage, we are not required to rule on this exception." *Allstate Ins. Co. v. Keillor*, 537 N.W.2d 589, 592 (Mich. 1995) (Riley, J. concurring).

The Court of Appeals of Michigan was again faced with this issue three years later in *Farm Bureau Mut. Ins. Co. v. Blood*, 583 N.W.2d 476 (Mich. Ct. App. 1998), when an insurance company relied on *Keillor* in seeking a favorable declaratory judgment. The Court found the criminal acts exclusion invalid on other grounds, declining to address its overall propriety. *Id.* at 478. Judge O'Connell nonetheless issued a concurrence in which he criticized *Keillor*, finding that it "is not good law in Michigan." *Id.* at 481. He noted that once the Supreme Court announces its

decision and declines to address an issue, "points of law not discussed in the Supreme Court's opinion or ruled upon by that Court are not authoritative and are not to be considered as having been so decided as to constitute precedents." *Id.* at 480. Highlighting that the Michigan Supreme Court noted its affirmance of *Keillor* "only insofar as they hold that coverage is precluded by the motor vehicle exclusion," Judge O'Connell found that "the Court appears to have specifically rejected those parts of the opinion not relating to the motor vehicle exclusion," which "is supported by the fact that Justice Riley wrote a separate concurring opinion" to signal her concerns about the criminal acts exclusion. *Id.* at 481.

The Court of Appeals of Michigan again considered *Keillor* in 2005 in *Holland v. Pronational Ins. Co.*, No. 254975, 2005 Mich. App. LEXIS 2473 (Ct. App. Oct. 6, 2005). There, the insured was accused, but not convicted, of multiple crimes. The insurance provider relied on *Keillor* to argue that "an allegation of criminal conduct is sufficient to trigger the exclusion clause and relieve it from the duty to defend." *Id.* at *15. The court rejected this position and found that "Defendant's reliance is misplaced." *Id.* The panel clarified that "this Court did not specifically hold [in *Keillor*] that allegations of criminal conduct were enough to trigger the exclusion clause." *Id.* at *16–17.

The Court further suggested that *Keillor* was meaningful only to the extent that an insurer establishes as a matter of fact that a crime had been committed: "It is

not clear what facts supported [the *Keillor*] Court's conclusion that 'Hayes served alcohol to a minor.' However, Hayes' refusal to contest the issue is instructive and seems to reflect that the court treated it as an undisputed fact." *Id.* at *17. In distinguishing *Keillor* and other prior cases, the *Holland* court grounded its decision, in part, on the fact that the insured "has not admitted the conduct constituting the crime or refused to contest coverage," which supported the conclusion that "it is not clear that a criminal act actually occurred". *Id.* at *17–18.

The appellate court further narrowed such exclusions in *Auto Club Grp. Ins. Co. v. Booth*, 797 N.W.2d 695 (Mich. Ct. App. 2010), finding that "a no-contest plea alone does not provide conclusive proof that Booth committed a crime." *Id.* at 698.[4] Many courts have since addressed policy exclusions like the one in Williams' policy. None have reversed course to suggest that the accusation of criminality alone is sufficient to trigger a criminal acts exclusion without express language in the insurance policy to that effect.

***

In view of this landscape, Michigan courts still routinely uphold criminal acts exclusions, finding them consistent with public policy and unambiguous. But, since

---

[4] The court ultimately approved of the criminal acts exclusion, which was written to apply "whether or not anyone, including the insured person: (a) is charged with a crime; (b) is convicted of a crime whether by a court, jury or plea of nolo contendere; or (c) enters a plea of guilty whether or not accepted by the court."

*Keillor* and its progeny, these cases always fall into one of two categories: (1) the insured admitted to or was convicted of a crime, activating the exclusion or (2) the policy expressly stated that the exclusion was applicable even without a criminal charge or conviction. Never is the mere allegation of criminality, which express language in the insurance policy, deemed sufficient. *See e.g., Auto Club Grp. Ins. Co. v. Daniel*, 254 Mich. App. 1, 4, 658 N.W.2d 193, 195 (2002) (approving exclusion where insured pleaded guilty to the relevant criminal charge); *Auto Club Grp. Ins. Co. v. Johnson*, Nos. 330669, 330698, 2017 Mich. App. LEXIS 913, at *8 (Ct. App. June 8, 2017) (approving policy that excluded coverage if the insured was charged with, convicted of, or pleaded guilty or nolo contendere to a crime); *Auto Club Grp. Ins. Co. v. Weitzel*, No. 250819, 2005 Mich. App. LEXIS 229, at *2 (Ct. App. Feb. 1, 2005) (approving exclusion where policy applies "regardless of whether the person intended to commit a criminal act or was charged with or convicted of a crime."); *Booth*, 797 N.W.2d at 698 (same); *Mich. Mun. Risk Mgmt. Auth. v. Boos*, Nos. 299273, 300093, 2011 Mich. App. LEXIS 1826, at *7 (Ct. App. Oct. 18, 2011) (approving policy exclusion requiring a criminal act and that the act be "proven, admitted or non-contested").

Neither category applies to the facts before this Court, as (1) Williams has never admitted to violating MCL 750.145e and has not been so convicted or charged, and (2) the Policy does not specify that it applies irrespective of conviction. And the

cases American Family cites for support each have facts falling into the above categories—clarifying why the criminal acts exclusion cannot control in this case: In *Allstate Ins. Co. v. Fick*, 572 N.W.2d 265 (Mich. Ct. App. 1997), the court approved of non-coverage based on a criminal acts exclusion even though the insured had not been convicted because the policy stated expressly that the "exclusion applies regardless of whether the insured person is actually charged with, or convicted of, a crime." *Id.* at 267. Thus, Category 2.

Unlike the *Fick* policy, the exclusion here is ambiguous. Contracts are ambiguous under Michigan law when "a term is equally susceptible to more than a single meaning." *Rudzinski v. Rudzinski*, No. 355312, 2022 Mich. App. LEXIS 1264, at *19 (Ct. App. Mar. 10, 2022). Critically, there is no language in the Policy defining or stating when a "criminal act" has been committed—i.e., whether a conviction is required, that only criminal charges must be filed, or that a mere accusation is sufficient. The Policy indicates only that coverage is precluded in the case of "a criminal act."  This ambiguity requires interpretation, and it is well-established under Michigan law that "the contract will be liberally construed in favor of the insured and strictly construed against the insurer." *Matson v. State Farm Mut. Auto. Ins. Co.*, 238 N.W.2d 380, 383 (Mich. Ct. App. 1975).

The lone phrase "arising out of a criminal act" is most reasonably interpreted to mean that the exclusion applies if the insured is found by a criminal court to have

committed a crime, not merely that he was accused of one in a civil lawsuit. By seeking a ruling otherwise, American Family asks the Court to determine without a criminal proceeding whether Williams violated a criminal statute under Michigan law. The Court will not oblige such a request. It cannot be that a "criminal act" is merely any action that permits a civil litigant to assert any number of criminal statutes against an insured. To find otherwise would contravene public policy and risk patent unfairness in our judicial system.

Judge William Murphy contemplated as much in a concurrence in *Olman v. Howard*, No. 258582, No. 258991, No. 259385, No. 259998, 2006 Mich. App. LEXIS 1822 (Ct. App. June 13, 2006). There, the Court considered an insurance policy that excluded coverage for "bodily injury or property damage arising out of a criminal act of an insured." *Id.* at *7. Under the policy, a criminal act was defined as "any act or number of actions which are criminal in nature whether or not the actions lead to successful prosecution or conviction." *Id.* Though the court found that coverage was excluded in that case because the insured had been convicted of a crime, Judge Murphy mused that "there may be situations in which application of a criminal-act exclusion such as the one at issue here, when considered with other policy exclusions, would be violative of public policy and unconscionable to enforce." *Id.* He aptly stated further:

> Given the enormous number of actions that may technically constitute
> a crime or be deemed criminal in nature under our vast statutory scheme

in the realm of criminal law, which can encompass intentional, willful and wanton, negligence, and strict liability crimes, and considering other standard policy exclusions, e.g., intentional-act exclusions, an insured can be left uncovered in innumerable situations and in certain circumstances where coverage should be afforded for purposes of public policy and to avoid unconscionability. The potential scenarios grow even greater in number and become endless upon consideration that the insured's actions need only be "criminal in nature" and need not be the subject of a criminal prosecution and conviction.

*Id.* at *8. One of the unconscionable scenarios about which Judge Murphy was concerned—where the insured had not been charged or convicted of a crime—now constitute the facts of this case.

American Family further relies on *Auto Club Grp. Ins. Co. v. Smith*, No. 294697, 2011 Mich. App. LEXIS 176, at *14 (Ct. App. Jan. 25, 2011), but it is also distinguishable. The insurer highlights that the *AutoClub* court "found that the criminal acts exclusion was not contrary to public policy" and that "the insured 'voluntarily excluded himself from insurance coverage' when he pleaded nolo contender to a criminal charge." ECF No. 26, PageID.211 (quoting *Auto Club Grp. Ins. Co. v. Smith*, 2011 Mich. App. LEXIS 176, at *14). But the fact that the insured in that case pleaded makes the case distinguishable, and slots it into category 1. Unlike in *Auto Club*, Williams has not pleaded guilty to any charge related to his dissemination of Bellestri's photos. This is a critical difference in facts. Without even an indictment, the Court has no basis to say that Williams violated a criminal statute. To do so would assuredly be against public policy. Though Courts have

29

found generally that criminal acts exclusions are favorable to public policy because they prevent criminals from seeking protection by insurance companies,[5] fundamental is the guarantee that one will not be deemed a criminal without due process and access to a proper tribunal. This guarantee should not be abrogated whenever one is merely accused of a tort that could also be interpreted to implicate a criminal statute.

***

Lastly, to the extent American Family contends that the exclusion can apply because Williams admitted to violating MCL 750.145e, that is not the case. To be clear, he admits to disseminating the photos without Bellestri's consent. ECF No. 29, PageID.305. But the statute requires proof that Williams did so "with the intent to threaten, coerce, or intimidate." MCL 750.145e(1). Even if the Court was not dubious of its authority to make such a determination, there is insufficient evidence to support a violation. American Family directs the Court to Williams' deposition testimony to support the argument that he admitted to sending the photos as a threat.

> Q: And when you were upset with her, would you threaten to send photos of her to family?
>
> A.    I have.

---

[5] *Auto Club Grp. Ins. Co. v. Daniel*, 658 N.W.2d 193, 196 (Mich. Ct. App. 2002) (noting that "as a matter of public policy, an insurance policy that excludes coverage for a person's criminal acts serves to deter crime, while a policy that provides benefits to those who commit crimes would encourage it.").

ECF No. 31, PageID.338. But Williams' admission that he *threatened* to send the photos is not an admission that he sent the photos *as a threat*. And immediately before this admission, Williams was asked whether he recalled disseminating illicit photos of Bellestri "to try to punish her or get back at her." ECF No. 31-1, PageID.343. Williams asserts that he did not recall, which is insufficient to satisfy the "coerce or intimidate" elements. *Id.* This paltry testimony does not constitute proof of motive.

For these reasons, there remains a genuine issue of material fact as to whether Counts V and VI establish that Williams committed a criminal act as described in the Policy. At this stage, because Williams has never been charged or convicted under MCL 750.145e, the Court will not apply the exclusion. If the Policy stated that the exclusion was applicable regardless of whether Williams was convicted of a crime, or if Williams had actually been convicted or pleaded guilty to disseminating the images, then American Family could seek reimbursement under the Policy as written. Such is not the case, and the Court has not been directed to any law militating a different conclusion. As such, American Family is required to continue to defend and indemnify Williams on Counts V and VI, and it is not entitled to reimbursement of defense costs on these claims.

## IV.   CONCLUSION

For the foregoing reasons, American Family's Motion for Summary Judgment (ECF No. 26) is **GRANTED IN PART** and **DENIED IN PART**. There is no duty to defend and indemnify Williams for Counts I–IV of the Underlying Lawsuit, and American Family is entitled to reimbursement of costs incurred. Williams is entitled to defense and indemnity on counts V and VI.

**IT IS SO ORDERED.**

<u>/s/ Gershwin A. Drain</u>
GERSHWIN A. DRAIN
U.S. DISTRICT JUDGE

## CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
June 13, 2024, by electronic and/or ordinary mail.
<u>/s/ Marlena Williams</u>
Case Manager